[No. 15009–0–I.   Division One.   June 30, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. PERRY MICHAEL WHITE, ET AL, *Appellants.*

*Perry Michael White,* pro se, and *Julie A. Kesler* of *Washington Appellate Defender Association,* for appellants.

*Norm Maleng, Prosecuting Attorney,* and *Edwin Inkley, Deputy,* for respondent.

GROSSE, J.—Perry Michael White and Timothy Kevin Shadduck appeal their convictions for possession of marijuana. Shadduck also appeals his conviction for possession of cocaine. Both White and Shadduck contend that there was no probable cause to issue the warrant under which the evidence was obtained and appeal the denial of their motion to suppress. We agree and reverse.

The evidence in this case was obtained under the guise of a search warrant. The affidavit in support of the issuance of the search warrant contained observations of a citizen in good standing, who wished to remain anonymous. Those observations included the following indicia located at White's and Shadduck's residence: bright lights emanating from the garage, noises from a fan in the garage, heavy foot and vehicle traffic to the residence, and the fact that the visitors had stays of short duration. The citizen did not say that he knew that marijuana was being grown there but rather that he suspected it because he had read in the newspaper that these facts were indicative of marijuana growing. These facts, together with the observation that the garage windows were covered, were independently verified by a detective. The police had obtained the electrical power consumption on the residence through the use of a special

inquiry judge subpoena. Those records demonstrated an almost twofold increase in power for a 2–month period.

This issue on a similar fact pattern was addressed in a recent decision by this court in *State v. McPherson,* 40 Wn. App. 298, 698 P.2d 563 (1985). In *McPherson,* a detective verified an anonymous tip regarding marijuana dealing by his observations of condensation on windows, black plastic covering the garage windows, and potting soil near the garage door. A printout from Seattle City Light demonstrated a two– to three–fold increase in power use for the time that McPherson occupied the premises. The *McPherson* court held that the anonymous tip, the follow–up police investigation, and the increased power usage were insufficient to establish probable cause since the information was not indicative of "criminal activity, suspicious activity or any activity at all." *McPherson,* at 301. The *McPherson* court specifically addressed the increase in power wattage and held that although unusual such increase was susceptible to too many other plausible explanations.

In the instant case neither the informant's tip nor the detective's independent investigation was sufficient to establish probable cause. Mere verification of innocent activity by the police is unilluminating as to any criminal activity. As the Supreme Court in *State v. Jackson,* 102 Wn.2d 432, 688 P.2d 136 (1984), stated:

> Corroboration of public or innocuous facts only shows that the informer has some familiarity with the suspect's affairs. Such corroboration only justifies an inference that the informer has some knowledge of the suspect and his activities, not that criminal activity is occurring. Corroboration of the informer's report is significant only to the extent that it tends to give substance and verity to the report that the suspect is engaged in criminal activity.

(Citations omitted.) *Jackson,* at 438.

The informant did not report that he had seen or heard any evidence of criminal activity. The affidavits only support a suspicion, not a probability, of criminal activity.

Contrary to the dissent's position, we are not here

requiring a prima facie showing of criminal activity. We are, however, requiring something more than mere suspicion and while we agree with the dissent that deference must be given to the magistrate issuing the warrant, such deference is not without limits.

■ Reviewing courts will not defer to a magistrate's decision where such a decision is based on information which is insufficient to determine probable cause. *Aguilar v. Texas,* 378 U.S. 108, 114–15, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964). *See also Beck v. Ohio,* 379 U.S. 89, 95, 13 L. Ed. 2d 142, 85 S. Ct. 223 (1964), wherein the Court held that

> the record . . . does not contain a single *objective* fact to support a belief by the officers that the petitioner was engaged in criminal activity at the time they arrested him.

(Italics ours.)

In order to establish probable cause the affidavit must set forth sufficient facts to lead a reasonable person to conclude that there is a probability that the defendant is involved in criminal activity. *State v. Cord,* 103 Wn.2d 361, 365, 693 P.2d 81 (1985). *See also Nathanson v. United States,* 290 U.S. 41, 46–47, 78 L. Ed. 159, 54 S. Ct. 11 (1933), holding that an affidavit is legally insufficient if it contains no underlying facts or circumstances from which the magistrate can deduce probable cause and is nothing more than a declaration of suspicion and belief. None of the cases cited by the dissent present a similar factual pattern to the case at bar. In each of those cases there existed extrinsic objective facts indicative of criminal activity. A recent decision of the Court of Appeals, *State v. Sterling,* 43 Wn. App. 846, 719 P.2d 1357 (1986) is indicative. In *Sterling,* unlike the present case, the informant clearly stated that criminal activity was occurring. Moreover, the independent investigation by the police in *Sterling* uncovered sufficient additional facts which corroborated the informant's tips.

Here, the police investigation of the power wattage and the independent surveillance do not suggest criminal con-

duct. *See Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969), wherein the Court held that the Federal Bureau of Investigation's surveillance of the defendant and its investigation of telephone company records were insufficient despite the fact that Spinelli was "known" to be a gambler. As the Supreme Court stated:

> But just as a simple assertion of police suspicion is not itself a sufficient basis for a magistrate's finding of probable cause, we do not believe it may be used to give additional weight to allegations that would otherwise be insufficient.

*Spinelli,* 418–19.

We are forced here, as the Supreme Court was in *Spinelli,* to state "we cannot sustain this warrant without diluting important safeguards that assure that the judgment of a disinterested judicial officer will interpose itself between the police and the citizenry." (Footnote omitted.) *Spinelli,* at 419. Mere suspicion is insufficient to establish probable cause. It was therefore error to issue the warrant without such probable cause, and the trial court erred in failing to suppress the evidence seized pursuant to the invalid search warrant.

The judgment is reversed.

WEBSTER, J., concurs.

SWANSON, J. (dissenting)—I cannot agree that narcotics officer Michael Farley's affidavit only supports a suspicion, not a probability, of criminal activity, as the majority asserts; therefore, I respectfully dissent.

This is a case where the information was furnished by a true citizen informant and corroborated by the independent investigation of a 7–year veteran police officer with over 50 narcotics investigations of marijuana growing operations to his credit. There is therefore no serious question presented concerning either veracity or basis of knowledge. *See State v. Smith,* 93 Wn.2d 329, 352, 610 P.2d 869, *cert. denied,* 449 U.S. 873 (1980). The sole question is whether the informa-

tion contained in the affidavit is complete and specific enough to constitute probable cause to search the defendants' residence.

As our Supreme Court stated in *State v. Cord,* 103 Wn.2d 361, 365–66, 693 P.2d 81 (1985):

> To establish probable cause the affidavit must set forth sufficient facts to lead a reasonable person to conclude there is a probability that the defendant is involved in criminal activity. Great deference is accorded the issuing magistrate's determination of probable cause.

(Citations omitted.)

Typical of the language found in the decisions of our federal courts in ruling on the sufficiency of search warrant affidavits is this statement in *United States v. Carlson,* 697 F.2d 231, 237 (8th Cir. 1983):

> In determining whether the affidavit was sufficient we must keep in mind that courts "evince a strong preference for searches made pursuant to warrant, and, in some instances, may sustain them where warrantless searches based on a police officer's evaluation of probable cause might fail." In view of this standard, "reviewing courts should interpret affidavits for search warrants in a commonsense and realistic fashion, and deference is to be accorded an issuing magistrate's determination of probable cause."

(Citations omitted.)

I recognize that a situation of this type presents a difficult question for the issuing magistrate where there is little doubt as to who committed the crime if a crime has been committed, but the circumstantial evidence recited does not conclusively establish the commission of a crime. If, as the majority says, the affidavit reveals nothing more than a declaration of suspicion, it is insufficient. However, if the circumstantial evidence alleged shows that a crime (*i.e.,* a violation of the Uniform Controlled Substances Act, RCW 69.50) has *probably* been committed, the magistrate has before him evidence sufficient to justify the issuance of a warrant. *State v. Smith, supra.*

The affidavit in question recites in pertinent part:

That your affiant has been a Police Officer for approximately 10 years; that he has been assigned to the Drug Enforcement Unit for a period of more than 2½ years; that during this time he has been involved in the investigation of over 100 narcotics cases;

That during the 3rd week in May, 1983, your affiant received information from a citizen, who wishes to remain anonymous; that this citizen is known to your affiant and is a member in good standing of the community; that this citizen stated that he believed the residents of the address of 1212 N.E. 187, Seattle, King County, Washington are growing Marihuana in their garage; that the citizen's suspicions are based on the following; that he has observed very bright light emitting from under the eaves of the garage; that he also heard the noise of a fan emitting from the same area; that he has observed very heavy foot and vehicle traffic to and from the residence; that these visitors have stays of very short duration; that this citizen is aware via community contact and various news sources that these elements are often indicative of growing Marihuana in residences;

That on 06/14/83, your affiant obtained a power use printout from Seattle City Light for this residence; that the printout was obtained through the use of an Inquiry Judge Supboena [sic]; that a copy of this printout is attached to this affidavit; that this printout shows that the most recent power consumption over a period of 58 days ending on 05/25/83 was 9,017 KW; that for 58 days during the same time period, 1982, the consumption totaled 5,387 KW; that this is close to a two–fold increase in total power consumption;

That on 06/23/83, Det. Marc Edmonds, King County Police Drug Enforcement Unit, observed the residence located at 1212 N.W. 187, Seattle, King County, Washington; that these observations were made from a property adjacent to the address and with the property owner's permission; that Det. Edmonds was made aware first of the noise of a very loud exhaust fan; that he then observed a vent hole cut in the side of the garage for the exhaust fan; Det. Edmonds also observed a very bright light emitting from the eaves of the garage; he also observed that the garage window had been covered on the inside by a blanket and that no light shown [sic] through the window; Det. Edmonds observed as well

heavy foot and vehicle traffic at the address of 1212 N.E. 187;

That Det. Edmonds has been a Police Officer for over seven years; that he has been assigned to the drug Enforcement Unit for over one year; that during that time he has conducted more than 50 investigations of Marihuana growing operations;

That in your affiant's experience, he has found that persons growing Marihuana in residences usually 1) use Halide lights for artificial lighting needed in the growing of Marihuana; that the lights emit a very bright glow which is difficult to conceal, 2) attempt to conceal the Marihuana and the lights by covering the windows to shield the fact that the bright lights are on most hours of the day, 3) that often there is heavy foot and vehicle traffic to Marihuana growing locations for the purpose of purchasing the Marihuana being grown, 4) use exhaust fans for the purpose of circulating the air in the growing area, and to exhaust the very humid air from the growing area, 5) show a large power consumption increase due to large power consumption of the Halide lights used in growing Marihuana;

That based on the above, your affiant believes the evidence of the crime of Violation of Uniform Controlled Substances Act is located at 1212 N.E. 187 in Seattle, King County, Washington, and that a search warrant should be issued directing that a search of this residence should be made and that any controlles [sic] substances, including Marihuana; be seized, together with any paraphernalia associated with the use, processing or growing of Marihuana and evidence relating to the occupancy and/or ownership of said residence along with any papers and documents relating to the growing, processing or sale of any controlled substances, including Marihuana.

It must be emphasized that the probable cause standard is something more than mere suspicion, but only the probability of criminal activity is required, not a prima facie showing, as the majority seems to imply. *State v. Seagull,* 95 Wn.2d 898, 907, 632 P.2d 44 (1981). What the probable cause test requires as a minimum is a 50 percent–plus probability that evidence of criminal activity is to be found in the premises described. 1 W. LaFave, *Search and Seizure* § 3.2, at 484 (1978).

The mere fact that there are innocent explanations for the facts described in Officer Farley's affidavit—a very bright light showing under the eaves of the garage, a loud exhaust fan with a vent hole in the garage wall, the garage window completely covered with a blanket, heavy foot and vehicle traffic involving short stays at the residence, and an almost double–fold increase in power consumption during the prior 2–month period—does not defeat the probable cause showing. W. LaFave, at 483–84. While each of these facts, considered in isolation, is quite innocent, the totality of the evidence, to an experienced narcotics officer familiar with the methods employed by persons growing marijuana in residences, did establish probable cause to believe that evidence associated with the use, processing or growing of marijuana was located at the defendants' residence. *United States v. Patterson*, 492 F.2d 995, 997 (9th Cir.), *cert. denied*, 419 U.S. 846 (1974); *accord, United States v. Fooladi*, 703 F.2d 180, 184 (5th Cir. 1983); *Tobias v. United States*, 375 A.2d 491, 494 (D.C. 1977); *People v. Valentine*, 17 N.Y.2d 128, 216 N.E.2d 321, 269 N.Y.S.2d 111, 114 (1966). An officer of a narcotics detail may find probable cause in activities which to a layman could be without significance. *State v. Patterson*, 83 Wn.2d 49, 57, 515 P.2d 496 (1973); *see State v. Cord, supra* at 366.

Here the cumulation of superficially innocent facts was such that a prudent person could say that an innocent course of conduct was substantially less likely than a criminal one. *United States v. Fooladi, supra; United States v. Patterson, supra; People v. Valentine, supra;* W. LaFave, *supra* at 484. I believe a magistrate acting reasonably could conclude that these activities superficially innocent when viewed separately were less likely to be innocent than criminal when considered as a whole. It seems clear to me, and, I suggest, to most observers of the contemporary scene, that what is described is just what the narcotics officer said it probably was: a marijuana growing and selling operation. It is not necessary to rule out all possible innocent explanations imaginable to conclude that it was more

likely than not that marijuana plants were growing in defendants' garage. *Tobias v. United States, supra; Peterkin v. United States,* 281 A.2d 567, 569 (D.C. 1971), *cert. denied,* 406 U.S. 922 (1972); W. LaFave, *supra* at 483–84.

It is well settled that the warrant's issuance must be upheld if there is a substantial basis for its issuance. *State v. Patterson, supra* at 55. I am unable to conclude that the activities described in the warrant affidavit could not persuade a prudent magistrate acting within the proper bounds of discretion of the likelihood that evidence of criminal activity would be found at the defendants' residence. *State v. Seagull, supra.*

A reasonable search is one based upon probability—a likelihood that evidence of criminal activity will be found. It does not require even a prima facie showing of guilt. *Spinelli v. United States,* 393 U.S. 410, 419, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969), makes this categorically clear, in saying:

[W]e do not retreat from the established propositions that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, *Beck v. Ohio,* 379 U.S. 89, 96 (1964); that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, *McCray v. Illinois,* 386 U.S. 300, 311 (1967); that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, *United States v. Ventresca,* 380 U.S. 102, 108 (1965); and that their determination of probable cause should be paid great deference by reviewing courts, *Jones v. United States,* 362 U.S. 257, 270–271 (1960).

Thus, when all of the circumstances as related under oath to the issuing magistrate are considered, the question of probable cause is reduced to whether there is a "substantial basis" for the warrant. The policeman's affidavit should not be judged as an entry in an essay contest nor subjected to microscopic examination. *Spinelli v. United States, supra.* A search warrant is issued usually as a pretrial writ, a characteristic of it which the Supreme Court stressed in *United States v. Harris,* 403 U.S. 573, 582, 29 L. Ed. 2d 723, 91 S. Ct. 2075 (1971), in

saying that, before trial, we deal in the "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act," and that common sense must be the ultimate yardstick. *State v. Patterson, supra* at 55.

The determination of whether it is more likely than not that evidence of criminal conduct will be found and consequently probable cause exists to issue a warrant must be made by the issuing judge. The issuance of a search warrant is a matter of judicial discretion, and our review is limited to determining whether the exercise of discretion was abused. *State v. Seagull, supra; State v. Smith, supra; State v. Anderson,* 37 Wn. App. 157, 160, 678 P.2d 1310 (1984).

In my opinion the experienced magistrate was justified in accepting the opinion of the narcotics officer affiant, who was a 10–year police officer who had investigated over 100 narcotics cases, that the observed facts, coupled with a doubling of power usage for the prior 2 months, was persuasive circumstantial evidence of ongoing criminal activity.[1] It was the issuing magistrate's discretionary duty to evaluate this evidence and determine the degree of probability. On this evidence, I believe Judge Killien exercised his discretion on tenable and manifestly reasonable

---

[1]*State v. McPherson,* 40 Wn. App. 298, 698 P.2d 563 (1985), though similar factually to the instant case, is inapposite. The *McPherson* court found an absence of probable cause primarily because "[t]he anonymous tip was insufficient to establish probable cause because there was no showing that the caller was honest or his information reliable, or that he obtained the information in a reliable manner." *McPherson,* at 300. The independent police corroboration of the citizen informant's information in the instant case negates any question of reliability.

The second basis for striking down the search warrant in *McPherson* was the court's determination that "[e]verything that was observed by Detective Oswald was commonplace, consistent with normal behavior." *McPherson,* at 301. The present case stands in sharp contrast to *McPherson.* Here, like the suppression hearing court and the issuing magistrate, I agree with the experienced narcotics officer affiant's opinion that the facts described in the affidavit when considered as a whole indicate not "normal behavior" but rather a marijuana growing operation.

*See State v. Sterling,* 43 Wn. App. 846, 850–52, 719 P.2d 1357 (1986), which distinguishes *McPherson* and upholds the magistrate's determination of probable cause on facts substantially similar to those present here.

grounds. *State v. Seagull, supra.*

I conclude as did the court in *State v. Jackson,* 102 Wn.2d 432, 446, 688 P.2d 136 (1984):

> While we acknowledge that the propriety of issuing a warrant under the facts of this case is debatable, the deference due the issuing magistrate tips the balance in favor of upholding the warrant.

I would affirm.[2]

Review denied by Supreme Court January 6, 1987.

---

[2]If the trial court's denial of the motion to suppress evidence seized pursuant to a search warrant were upheld, the next issue raised by the defendants is whether their electrical power consumption record was illegally obtained. *See generally In re Rosier,* 105 Wn.2d 606, 717 P.2d 1353 (1986). Even assuming that this issue is of a constitutional magnitude such that it can be raised for the first time on appeal, RAP 2.5(a); *State v. Dictado,* 102 Wn.2d 277, 286–87, 687 P.2d 172 (1984), this issue cannot be addressed by this court in this appeal based upon the incomplete record regarding the use of the special inquiry judge subpoena power pursuant to RCW 10.27.170. *State v. Murphy,* 35 Wn. App. 658, 666, 669 P.2d 891 (1983), *review denied,* 100 Wn.2d 1034 (1984).