[No. 21677-9-II.    Division Two.    January 14, 2000.]
THE STATE OF WASHINGTON, *Respondent*, v. JEFFERY ALLEN BAUER, *Appellant*.

---

*Brett Andrews Purtzer* of *Law Offices of Monte Hester,* for appellant.

*John W. Ladenburg, Prosecuting Attorney,* and *John Christopher Hillman, Deputy,* for respondent.

HUNT, J. — Jeffery Allen Bauer[1] appeals his conviction for unlawful manufacture of a controlled substance, marijuana. He argues that: the trial court should have suppressed the evidence as a product of an illegal search warrant; the trial court should have compelled disclosure of the confidential informant; and he was denied effective assistance of counsel. Holding that the evidence was seized pursuant to a legally valid search warrant and finding no reversible error, we affirm.

## FACTS

A citizen informant contacted the Washington State

---

[1] The record contains different spellings of Bauer's first name. We shall use the spelling employed on the Judgment and Sentence: "Jeffery."

"marijuana hotline"[2] and Pierce County Sheriff's Deputy Kim Pecheos to report a marijuana grow operation at Jeffery Allen Bauer's residence at 10324 Kapowsin Highway in Graham. The informant expressed concern about the manufacture and sale of illegal narcotics, needed the State reward money, and wished to remain anonymous for fear of retaliation. Deputy Pecheos confirmed that the informant had been a resident of Washington for over nine years, was a registered voter, and had no criminal history. Pecheos also confirmed details of the informant's factual information and obtained power records for that address, depicting an unusually high increase in power consumption during June and July: higher than for the colder months of January through April, over twice as high as a comparison residence's usage, and nearly three times the amount used by the previous tenant.

Based on this information, Pecheos compiled an affidavit in support of a search warrant, reciting, in part, the following:

> The C/c stated that Jeffery A. Bauer and Dawn Swab live at the residence located at 10324 Kapowsin Hwy E. and have the marijuana grow inside the residence. The C/c stated that he/she had been living in a residence for over five years where a marijuana grow was being operated about 12 years ago and is familiar with what growing marijuana looks like, smells like and knows the various stages of growth of the marijuana plant. The C/c also admitted to using marijuana in the past. The C/c has observed the marijuana grow within the last thirty days while visiting Jeffery Bauer and Dawn Swab. There are about 96 maturing marijuana plants in what use [sic] to be the spare bedroom. The room has since been walled off and the only entrance is through a secret door behind some paneling in the living room. The window to the bedroom has been covered with a foam core insulation that has reflective material on one side. Mother plants and starter plants are in a separate room. The C/c described the residence as being a two bedroom house

---

[2] The marijuana hotline is an organization funded by the State that rewards individuals providing information which leads to the seizure of a marijuana grow operation.

with a detached garage. The yard is well maintained and the house is surrounded by fields. The C/c stated that Jeffery Bauer drives a white Chevy Camaro with a license number of "GIGAWAT," has a red ford pickup, a jet boat, and Dawn Swab drives a blue square shaped car. The C/c also stated that Bauer owns a business called "JIGAWATTS."[3]

On August 29, 1996, the Pierce County Superior Court issued a search warrant for Bauer's property, based on Pecheos' affidavit.

The warrant was executed the next day, resulting in the seizure of growing marijuana from Bauer's residence. Bauer was charged with unlawfully manufacturing a controlled substance under RCW 69.50.401(a).

A pretrial hearing was scheduled for motions to suppress evidence and to compel disclosure of the confidential informant's identity. Bauer's trial counsel filed only a Motion for Disclosure of Confidential Informant. At the pretrial hearing, Bauer's counsel withdrew the motion to compel disclosure and instead argued for suppression based on unreliability of the informant. The trial court denied both motions. Bauer was tried and found guilty as charged.[4]

## ANALYSIS
### I. Motion to Suppress

■ Washington applies the two-pronged *Aguilar-Spinelli* test to determine whether information provided by an informant establishes probable cause to issue a search war-

---

[3]Deputy Pecheos confirmed the following information: that there was a two-bedroom residence at 10324 Kapowsin Highway East with a detached garage and a well-maintained yard, surrounded by fields; that it appeared that one window on the east side of the residence was covered from the inside; that Bauer owned a 1984 Chevy Camaro and a jet boat; that Dawn Swab owned a 1986 blue Nissan Pulsar, which was square in shape, that Bauer owned a business called "JIGA-WATTS"; and that Bauer's driver's license listed 10324 Kapowsin Highway East as his address.

[4]Bauer filed a timely notice of appeal. But his appeal was not perfected and we dismissed his appeal. At a sentence review hearing the superior court discovered that Bauer was unaware that his appeal had been dismissed. The hearing was continued, Bauer's trial counsel withdrew, and new counsel was substituted. On May 5, 1998, we recalled the dismissal mandate and reinstated Bauer's appeal.

rant: basis of knowledge and reliability. *State v. Jackson*, 102 Wn.2d 432, 436-37, 440, 688 P.2d 136 (1984); *Spinelli v. United States*, 393 U.S. 410, 415-16, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964). Both prongs of the *Aguilar-Spinelli* test must be satisfied to establish probable cause. *See State v. Smith*, 110 Wn.2d 658, 664, 756 P.2d 722 (1988). If an informant's tip fails under either prong, the warrant fails unless independent police investigation corroborates the tip to such an extent that it supports the missing elements of the test. *Jackson*, 102 Wn.2d at 438.

■ We review issuance of a search warrant for abuse of discretion. *State v. Cole*, 128 Wn.2d 262, 286, 906 P.2d 925 (1995). Here, we conclude that Pecheos' affidavit establishes probable cause for the issuance of a search warrant because it demonstrates both the factual basis for the informant's knowledge and reliability of the citizen informant. Thus, it is not necessary for us to address the alternate prong, whether the officer independently corroborated the information.

## A. Basis of Informant's Knowledge

■ The knowledge prong of the *Aguilar-Spinelli* test is satisfied if the informant has personal knowledge of the asserted facts. *See Jackson*, 102 Wn.2d at 437-38. Here, 12 years earlier, the informant had lived for 5 years in another residence where marijuana was grown and had become familiar with the appearance and smell of marijuana; also, the informant had used marijuana in the past. Within the previous 30 days the informant had visited Bauer and had seen the marijuana grow in a walled-off room, accessible only through a secret door; the mother plants were in a room separate from the starter plants.

■ Great deference should be given to the probable cause determination of the issuing magistrate. *State v. Young*, 123 Wn.2d 173, 195, 867 P.2d 593 (1994). Generally, applications for search warrants "must be judged in the light of common sense, with *doubts resolved in favor of the*

*warrant." Id.* at 195 (emphasis added). Based on past experience, the informant could recognize marijuana growing. The description of Bauer's grow, particularly the location of the secret room, demonstrates the informant's knowledge of Bauer's criminal activity. We hold that the knowledge prong of the *Aguilar-Spinelli* test is satisfied.

## B. Reliability of Citizen Informant

■ The level of evidence necessary to establish the reliability prong of *Aguilar-Spinelli* depends on whether the informant is a professional or a citizen informant.[5] *State v. Northness*, 20 Wn. App. 551, 556-57, 582 P.2d 546 (1978). Evidence of past reliability is not strictly required where the informant is a citizen. *Id.* at 556.

To establish the reliability of a citizen informant, the police must "interview the informant and ascertain such background facts as would support a reasonable inference that he is 'prudent' or credible, and without motive to falsify." *State v. Chatmon*, 9 Wn. App. 741, 748, 515 P.2d 530 (1973). To guard against the "anonymous troublemaker," Washington requires "heightened demonstrations of credibility for citizen informants whose identities were known to the police but not revealed to the magistrate." *State v. Ibarra*, 61 Wn. App. 695, 700, 812 P.2d 114 (1991). The affiant must supply enough additional information to support an inference that the informant is telling the truth.[6] *Id.* at 700.

---

[5]Bauer contends that the informant is a professional because he or she is not acting solely from a sense of civic duty but is motivated by self-interest in the financial reward. But Bauer cites no authority for the proposition that interest in a public hotline financial reward transforms a citizen informant into a professional informant-for-hire.

[6]Bauer relies on *State v. Ibarra*, 61 Wn. App. 695, 700, 812 P.2d 114 (1991); *State v. Mickle*, 53 Wn. App. 39, 765 P.2d 331 (1988); and *State v. Franklin*, 49 Wn. App. 106, 741 P.2d 83 (1987), to support his contention that the information in Deputy Pecheos' affidavit was insufficient to establish the informant's credibility. These cases, however, are distinguishable. In *Ibarra* and *Mickle*, the affidavits do not identify why the informants were at the crime scene or what were the informants' reasons for remaining anonymous. *Ibarra*, 61 Wn. App. at 701; *Mickle*, 53 Wn. App. at 43. In *Franklin*, the officer offered only "his personal

The record here confirms that the informant was a concerned citizen. The informant revealed his or her identity to Deputy Pecheos, who confirmed that the informant did not have a criminal record, had been a citizen of Washington for over nine years, and was a registered voter. The informant had observed the marijuana grow while recently visiting Bauer's home.[7] The informant recited fear of retaliation as a valid reason for remaining anonymous and concern about the manufacture and sale of illegal narcotics as one reason (in addition to the hotline reward) for reporting the crime. As presented to the issuing magistrate, Pecheos ascertained sufficient background facts to support a reasonable inference that the informant was credible and without motive to falsify. We hold that the warrant meets the second prong of the *Aguilar-Spinelli* test.

## II. Motion to Disclose Informant's Identity

■ ■ Generally, an informant's identity may remain confidential unless disclosure "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Roviaro v. United States*, 353 U.S. 53,

---

opinion that the informant was an upstanding citizen since the informant had no criminal record, was motivated by a desire to thwart crime, and requested anonymity because of fear of retribution." *Franklin*, 49 Wn. App. at 109. The only supporting fact provided to the magistrate was that the informant had no criminal record, which Division Three held was not enough information to allow the magistrate to determine credibility. *Id.*

Moreover, as the State argues, Bauer's case is similar to *State v. Berlin*, 46 Wn. App. 587, 731 P.2d 548 (1987), in which the affidavit stated:

Affiant has checked and found that the concerned citizens involved had no criminal background, came forward voluntarily, gave the appearance of being an honest citizen, and gave to affiant his or her name, phone number, and address to affiant [sic] but wishes to remain anonymous for fear of retaliation.

*Id.* at 591. The court found that, because the informants had divulged their names and addresses to the affiant, and because the affiant had checked their backgrounds, had determined that they had no criminal records, and gave a legitimate reason why they wished to remain anonymous, there was enough information for the magistrate to determine reliability. *Id.* at 591-92.

[7]Deputy Pecheos stated in his affidavit that the informant "observed the marijuana grow . . . while visiting Jeffery Bauer and Dawn Swab."

60-61, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957). We review for abuse of discretion a trial court's denial of a request to disclose the informant's identity. *State v. Petrina*, 73 Wn. App. 779, 782, 871 P.2d 637 (1994). A trial court abuses its discretion when it acts on untenable grounds or for untenable reasons or when its decision is manifestly unreasonable. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Here, although Bauer filed a pleading entitled "Motion for Disclosure of Confidential Informant," his motion actually sought to suppress the marijuana evidence. Moreover, Bauer withdrew his motion to compel disclosure and substituted a motion to suppress. Bauer alleged no misrepresentation in Deputy Pecheos' affidavit. And, as the trial court found:

1. The confidential informant is not a material witness on the question of the defendant's guilt or innocence.

2. The defendant has not satisfied his burden of showing that the informant has testimony which is relevant and material to the defense.

Bauer has established no abuse of discretion by the trial court with respect to his withdrawn motion to compel disclosure of the informant's identity.

### III. Ineffective Assistance of Counsel

There is a strong presumption that counsel has rendered adequate assistance and has made all significant decisions by exercising reasonable professional judgment. *State v McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995); *State v. Lord*, 117 Wn.2d 829, 883, 822 P.2d 177 (1991). The standard of review for determining whether a criminal defendant has been denied effective assistance of counsel involves a two-part test: The defendant must show that counsel's performance was deficient and that the deficient performance resulted in prejudice. *Id.* at 883 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Under the prejudice prong,

the defendant " 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Lord*, 117 Wn.2d at 883-84 (quoting *Strickland*, 466 U.S. at 694). If defense counsel's trial conduct can be characterized as legitimate trial strategy or tactics, then it cannot constitute ineffective assistance. *Id.* at 883.

Bauer asserts that his trial counsel's performance was deficient because: he did not file a brief in support of the suppression motion; he filed his brief in support of the disclosure motion late; he withdrew the disclosure motion and argued the suppression motion; and he failed to cite the Washington cases that his appellate attorney would have cited. Finally, Bauer argues that if the suppression motion had been argued "competently and diligently," there was a reasonable probability that the motion would have been granted. We disagree.

Denial of Bauer's motion to suppress does not mean that his counsel was ineffective. Trial counsel's performance may not have been optimum, but it was not deficient. He clearly argued the motion to suppress (based on the informant's unreliability) and cited relevant authority, including *State v. Cole*, 128 Wn.2d 262, 906 P.2d 925 (1995), and *State v. Ibarra*, 61 Wn. App. 695, 812 P.2d 114 (1991). Moreover, based on an independent review of the record, we have affirmed the finding of probable cause for issuance of the search warrant used to seize the marijuana; thus, the trial court properly denied Bauer's motion to suppress.

Even if Bauer's trial attorney's performance could be said to have been deficient, which we do not so find, Bauer has not shown that it was prejudicial. Bauer has not shown that, but for his trial attorney's alleged errors, the result of the pretrial suppression/disclosure hearing would have been different. There is nothing in the record or in Bauer's argument on appeal to suggest that the trial court would have granted either the motion to suppress or the motion to disclose had trial counsel presented his motions differently.

We hold that there was probable cause to issue the search warrant; the trial court did not abuse its discretion in refusing to suppress the evidence or in denying the motion to compel disclosure; and trial counsel's performance was neither deficient nor prejudicial. Affirmed.

BRIDGEWATER, C.J., concurs.

ARMSTRONG, J. (dissenting) — Because I believe the affidavit in support of the search warrant was insufficient to show the reliability of the informant, I respectfully dissent.

The State must establish with facts in the search warrant affidavit the reliability of an undisclosed citizen informant. *State v. Northness*, 20 Wn. App. 551, 554, 582 P.2d 546 (1978). Such reliability can be "corroborated by description of him, his purpose for being at the locus of the crime, and the reason for his desire to remain anonymous." *State v. Chatmon*, 9 Wn. App. 741, 748, 515 P.2d 530 (1973).

In *State v. Mickle*, 53 Wn. App. 39, 765 P.2d 331 (1988), the police used information obtained from an undisclosed citizen informant to get a search warrant. The affidavit recited that the informant was a property owner, had no criminal record and owned his or her own business. The court held that this information was insufficient to provide the magistrate with a basis to judge the informant's credibility. Similarly, in *State v. Franklin*, 49 Wn. App. 106, 741 P.2d 83 (1987), the police officer used information from a confidential citizen informant and identified the informant as an " 'upstanding citizen with no criminal record and whose only motive for supplying the police with . . . information is to thwart a crime . . . [.]' " *Franklin*, 49 Wn. App. at 107 (alteration in original). The officer also reported that the informant wished to remain anonymous for fear of retribution. The court held this information did not supply sufficient facts from which the magistrate could determine that the informant was credible. And we have held that an officer's description that a confidential citizen informant

"is acting out of sense of civic duty, is not seeking any monetary compensation or leniency, and has never been arrested" insufficient to show credibility. *State v. Ibarra*, 61 Wn. App. 695, 701, 812 P.2d 114 (1991).

But in *State v. Berlin*, 46 Wn. App 587, 731 P.2d 548 (1987), Division One held sufficient a description of the confidential citizen informants as "concerned citizens involved [who] had no criminal background, came forward voluntarily, gave the appearance of being an honest citizen, and gave to affiant his or her name, phone number, and address. . . ." *Berlin*, 46 Wn. App. at 589. The additional facts in *Berlin*, not given in *Franklin*, *Mickle*, or *Ibarra* are the phone numbers and addresses the informants gave to the police. And, although the court did not discuss it as a corroborating circumstance, in *Berlin* the officer had received reports from three citizen informants. *Berlin*, 46 Wn. App. at 588.

Here, the confidential informant is described only as a resident of nine years and a registered voter with no criminal record.[8] The officer did not report receiving the informant's phone number or address. Providing such information is arguably significant because it suggests the informant is willing to be contacted again by the police. Presumably an anonymous troublemaker would not want the police to be able to trace him or her. And no explanation was given of the informant's purpose for being at Bauer's residence. Thus, the magistrate had only the officer's general, conclusory description of the informant. This is not sufficient to judge the credibility of the informant. *Ibarra*, 61 Wn. App. at 701; *Mickle*, 53 Wn. App. at 43; *Berlin*, 46 Wn. App. at 591. Moreover, the informant admitted using marijuana in the past, living in a residence for over five years where marijuana was being grown, and was seeking money in exchange for the information—all of which raise concerns about whether the informant was truly a citizen informant. *Cf. Ibarra*, 61 Wn. App. at 701.

---

[8]Deputy Pecheos says that he "confirmed" this information. He does not say how. The deputy may simply have asked the informant for this information.

Finally, high electrical consumption rates alone are insufficient to establish probable cause or to corroborate information supplied by a confidential informant. *State v. Huft*, 106 Wn.2d 206, 211, 720 P.2d 838 (1986).

Because the reliability of the informant was not established, I believe the search warrant defective; accordingly, Bauer's motion to suppress the evidence should have been granted.

Review denied at 140 Wn.2d 1025 (2000).