[No. 56567-8. En Banc. May 17, 1990.]

THE STATE OF WASHINGTON, *Respondent*, v. EDWARD A. MAXWELL, *Petitioner*.

*Jeffrey Steinborn,* for petitioner.

*Andrew K. Miller, Prosecuting Attorney,* and *Jeffrey Finney, Deputy,* for respondent.

*Mark W. Muenster* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae for petitioner.

SMITH, J.—This appeal is based upon an order suppressing evidence obtained pursuant to a search warrant. Relevant information is based solely on the affidavit supporting the search warrant. The affidavit was executed by Detective T. Carlson of the Benton County Sheriff's Department and contains a report of statements from a "concerned citizen." The trial court, the Honorable Dennis D. Yule, granted the motion to suppress and dismissed the case. The State appealed to the Court of Appeals, Division Three, which reversed and remanded for trial.

We reverse the Court of Appeals and affirm the trial court's dismissal of the case.

The trial court granted defendant's motion to suppress the evidence because the affidavit submitted to the magistrate did not establish probable cause for issuance of a search warrant.

The trial court considered the following facts stipulated by the parties:

1. The "Citizen Informant" was incorrect in his assertion that all windows in the residence to be searched were covered with tin foil: only one window was covered with foil.

2. Citizen was incorrect about license on Chevy Nova. That plate returns to a 1977 Dodge registered to Ann Thorselt.

3. Police investigation failed to establish any link between David Bruises and the residence, other than the

fact that a vehicle registered to him was allegedly seen at the residence.

4. When interviewed by the undersigned counsel and Deputy Prosecuting Attorney Jeff Finney, Benton County Deputy Sheriff Hodge stated that he could not recall who at the power company gave him this information. It might have been the manager, the "security guy," or one of two clerks who work at the office.

5. Detective Carlson failed to advise the magistrate that, although he had been to the front door of the residence at least *seven* times, he *never* detected the odor of marijuana, the sound of ballasts or fans, or any bright lights. Detective Carlson was familiar with the smell of growing marijuana, and had used allegations of marijuana smell and/or his observation of bright lights as a part of probable cause for a search warrant.

6. Although Detective Carlson conducted considerable surveillance of the residence, he *never* saw anyone in the house, or coming or going.

7. In an interview conducted by the undersigned counsel and Deputy Prosecuting Attorney Jeff Finney, Benton County Detective Sheriff Hodge stated that he merely called an acquaintance at the PUD and requested the information. He made no showing as to the basis for his request, nor did he seek or obtain prior judicial approval. He stated that he was investigating a marijuana grow operation.

The affidavit submitted by Detective Carlson stated in its entirety:

On approximately 09–16–87 I received information from a concerned citizen/neighbor who contacted the Benton County Sheriff's Office with the following information; That a house located at 4103 S. Kent had been rented in the last couple of months and that two male subjects had moved some items in, but no one had ever moved in, but would show up a couple of times a day and stay only 15 to 30 minutes at a time [*sic*]. The citizen also stated that all the windows had tin foil on them. I checked and found only one window had tin foil and the rest

had curtains or covers over them. Once the citizen overheard two of the subjects talking and heard "if we ever get caught doing this, we will be in prison forever." The subjects have also been observed backing a U-Haul covered trailer into the garage where it's unhooked and the pickup pulled out and the garage door pulled down. In 15 to 20 minutes they exit and open the garage hook up the trailer and leave [sic].

The concerned citizen describes 3 vehicles coming and going to the residence the first is a newer dark Chevy pickup which I believe is Ed Maxwell's and the second is an old ElCamino [sic] with Oregon lifcense [sic] which belongs to David A. Brusius [sic]. The concerned citizen has been unable to get a license number to a newer Chevy Camaro. The 3rd vehicle the citizen gave a license number that returns on a 1977 Dodge. But the citizen describes it as a Chevy Nova. The citizen will keep an eye out for the car.

I checked with PUD and found that the current subscriber is a Edward A Maxwell and his girlfriend Traci L. Wood of 425 Columbia Center Blvd. Apt. #F-207. I also ran all 3 license numbers #1 UU6847, a 1986 Chevy Pickup belongs to Ed A. Maxwell. #2 Oregon license LJP202, a 1970 El Camino belongs to a David A. Bruises from Azalea Oregon (Douglas County). #3 UKF964 a 1977 Dodge belongs to Anne F. Thorselt, Puyallup Washington.

I've spent time watching the residence. I've noticed that the lawn appears to be dry and uncut. There is only two lights on at all times night and day it's the same lights the front porch and an interior hall light [sic]. I've found no signs of habitation in the residence. I've noticed no trash cans out on the curb on garbage day. I checked with Kennewick Disposal and found there to be no scheduled service to that residence.

I've contacted the PUD they stated that the power usage is normal for a residence that size and it [sic] it's being lived in and used but they felt that if no one was living there then the usage is abnormally high.

The concerned citizen states that when this started back a couple of months months [sic] ago that most of the visits were in the daytime. Then recently the visits change to later in the evening. At approximately 1100 pm still only lasting 15 to 20 minutes [sic].

I've checked all the names provided by BIPIN and DOL and I've discovered that David A. Brusius [sic], the registered owner of the 1970 Chevy ElCamino [sic], Oregon license LPJ202 had been convicted on 10-27-78 on a grand jury warrant for manufacture of a controlled substance ti-wit [sic]; marijuana in Douglas County Oregon. And that he pled guilty to possession for less then [sic] one ounce of marijuana.

A search warrant was issued based upon the affidavit.[1]

In its appeal to the Court of Appeals, Division Three, the State contended that the credibility of the informant and the reliability of the information were established and that the information in the affidavit established probable cause.[2] The Court of Appeals agreed and reversed and remanded for trial. The court noted that while most of the information in the affidavit may only rise to the level of suspicion, the statement overheard by the citizen, "if we ever get caught doing this, we will be in prison forever," raised it to the level of probable cause.

The Court of Appeals noted that RCW 42.17.314 (which requires a written statement to the public utility district for inspection or copying of records of any person and contains the restriction that information obtained in violation of the statute is not admissible in any criminal proceeding) did not apply because application for a search warrant is not a criminal proceeding, and that obtaining current usage information did not require copying or inspecting records.[3]

Edward A. Maxwell petitioned this court for discretionary review. We granted review. *State v. Maxwell*, 113 Wn.2d 1028, 784 P.2d 532 (1989).

The questions presented in this case are:

1. Whether a law enforcement officer's obtaining a record of current power usage through a telephone request to the public utility violated RCW 42.17.314; and

2. Whether a law enforcement officer's obtaining of the record of current power usage from the public utility

---

[1]The record does not indicate what offense Edward Maxwell was charged with, although he states in his petition for review, and his attorney agreed in argument, that he was charged with the offense of unlawful manufacture of marijuana. The record does not indicate what was obtained from the search, although Petitioner Maxwell states in his petition for review that 20 marijuana plants growing under two lights were seized.

[2]*State v. Maxwell*, 55 Wn. App. 446, 778 P.2d 51 (1989).

[3]*State v. Maxwell*, 55 Wn. App. 446, 453–54, 778 P.2d 51 (1989).

violated article 1, section 7 of the Washington State Constitution.

Petitioner Maxwell contends the Court of Appeals "judicially nullified" RCW 42.17.314. The statute provides:

> A law enforcement authority may not request inspection or copying of records of any person, which belong to a public utility district or a municipally owned electrical utility, unless the authority provides the public utility district or municipally owned electrical utility, with a written statement in which the authority states that it suspects that the particular person to whom the records pertain has committed a crime and the authority has a reasonable belief that the records could determine or help determine whether the suspicion might be true. Information obtained in violation of this rule is inadmissible in any criminal proceeding.

RCW 42.17.314.

In 1987 the Legislature enacted RCW 42.17.314 in response to *In re Rosier*, 105 Wn.2d 606, 717 P.2d 1353 (1986).[4] That was a case construing the public disclosure act, RCW 42.17. In *Rosier*, this court applied a balancing test for determining whether to release information contained in public records.[5] The court stated that generally a public agency may not inquire into the purpose for which information is sought; however, an exception is warranted where law enforcement seeks records of power consumption of a particular person. This court stated that the utility company should require requesting officers to articulate a specific suspicion of particular illegal conduct, rather than a mere "'reason' for the request, whenever they seek disclosure of particular information matched to a specific individual."[6]

---

[4]*See* Final Bill Report, Substitute House Bill 4, 50th Legislature (1987). See Intent—note following RCW 42.17.255.

[5]*In re Rosier*, 105 Wn.2d 606, 717 P.2d 1353 (1986).

[6]*In re Rosier*, 105 Wn.2d at 615.

Following *In re Rosier,*[7] *supra,* the Legislature in 1987 amended the public disclosure act. It codified the requirement that law enforcement personnel seeking records of a public or municipal utility have specific suspicion of criminal activity; and further required that law enforcement personnel make their requests in writing.[8]

In this case, the officer telephoned the utility to determine the identity of the current subscriber for a particular address and then requested usage for that address. The Court of Appeals concluded that RCW 42.17.314 did not apply because obtaining current usage information did not involve copying or inspecting records.

■■ The detective's request by telephone in this case circumvented the statutory requirement that law enforcement personnel make written requests for information pertaining to a particular person's record of power consumption. RCW 42.17.314 specifically provides that information obtained in violation of its rule is not admissible in any criminal proceeding. The Court of Appeals in this case concluded that an application for a search warrant is not a "criminal proceeding." This is not correct, at least as applied to this case. Issuance of a search warrant is part of criminal process and involves a matter of procedure.[9] Logically, then, application for and issuance of a search warrant is a "criminal proceeding" within the meaning of RCW 42.17.314. This does not mean, however, that a case has been filed at this stage of the proceedings, nor that such defense rights as *Miranda*[10] warnings or appointment of counsel become operative at this stage.

---

[7]See Intent—note following RCW 42.17.255; Final Bill Report, Substitute House Bill 4, 50th Legislature (1987).

[8]RCW 42.17.314.

[9]*State v. Fields,* 85 Wn.2d 126, 530 P.2d 284 (1975).

[10]*See Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

Information was obtained from the utility company in this case in violation of the statute. It should not have been considered by the magistrate for issuance of the search warrant.[11] A search warrant based upon an affidavit containing illegally obtained information is not rendered invalid, however, if the affidavit contains otherwise sufficient facts to establish probable cause independent of the illegally obtained information.[12]

■ Probable cause is established in an affidavit supporting a search warrant by "setting forth facts sufficient for a reasonable person to conclude the defendant probably is involved in criminal activity."[13] Even if information supplied by an informant does not establish probable cause, it may be established by independent police investigation. The investigation must point to suspicious activities or indications of criminal activity along the lines suggested by the informant. The investigation would not be sufficient if it corroborates only innocuous facts.[14]

In addition to the information obtained from the utility company, the affidavit contained description by the "concerned citizen" of frequent brief visits; description by the citizen of three vehicles; a statement overheard by the citizen; and description of a window covered with tin foil. However, without the information obtained from the utility

---

[11]RCW 42.17.314.

[12]*State v. Coates,* 107 Wn.2d 882, 888, 735 P.2d 64 (1987).

[13]*State v. Huft,* 106 Wn.2d 206, 209, 720 P.2d 838 (1986) (citing *State v. Cord,* 103 Wn.2d 361, 365, 693 P.2d 81 (1985)).

[14]*State v. Huft,* 106 Wn.2d 206, 720 P.2d 838 (1986) (increased electrical consumption and bright light emitting from basement not sufficient probable cause to issue search warrant). *Cf. State v. Murray,* 110 Wn.2d 706, 757 P.2d 487 (1988) (increased electrical consumption and description of the house were innocuous details; but combined with evidence of electric fan usage, extreme levels of heat observed in the basement and the basement's notable darkness, as well as informant's statement that marijuana was being grown in the house, was sufficient probable cause for issuance of search warrant).

company, the detective could not have determined the identity of persons renting the premises.

In this case, the Court of Appeals, although reviewing the entire affidavit, relied for the primary indication of criminal activity on the alleged statement of an unidentified person reportedly overheard by the "concerned citizen" at an undisclosed time and related to Detective Carlson, who reported it in his affidavit. However, the statement was not in any manner connected to Petitioner Maxwell. Out of context, it means nothing.[15] Even if the statement were evidence of criminal activity, it does not support a reasonable probability that the activity was occurring at the time the warrant was issued.[16]

Although a magistrate reviewing an affidavit for a search warrant is accorded deference, that deference is not boundless.[17] The affidavit does not indicate what criminal activity was suspected. The only mention of "marijuana" is the reference to David A. Bruises' prior conviction.[18]

We conclude that the evidence in this case does not constitute sufficient facts for a reasonable person to determine that criminal activity was occurring.

Petitioner Maxwell claims that obtaining his record of power consumption violated his right under article 1, section 7 of the Washington Constitution not to be disturbed in his private affairs without authority of law. This

---

[15]See State v. Maxwell, 55 Wn. App. 446, 457, 778 P.2d 51 (1989) (Thompson, C.J., dissenting).

[16]See State v. Higby, 26 Wn. App. 457, 460, 613 P.2d 1192 (1980) (citing Sgro v. United States, 287 U.S. 206, 77 L. Ed. 260, 53 S. Ct. 138, 85 A.L.R. 108 (1932)).

[17]See State v. Huft, 106 Wn.2d 206, 211–12, 720 P.2d 838; United States v. Leon, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984).

[18]Cf. State v. Murray, 110 Wn.2d 706, 757 P.2d 487 (1988) (informant asserted personal knowledge of marijuana being grown in the house).

court has never decided this issue.[19] "A reviewing court should not pass on constitutional matters unless absolutely necessary to its determination of the case."[20] It is not necessary for us to address the issue in this case and we decline to do so.

We conclude that obtaining by a law enforcement officer of Petitioner Maxwell's record of power consumption merely through a request by telephone violated RCW 42.17.314. The information having been obtained in violation of the statute, it was not admissible in proceedings for issuance of a search warrant. The statute prohibits admission in any criminal proceeding of information obtained in violation of its terms. An application for a search warrant is part of a criminal proceeding under the facts of this case.

We reverse the Court of Appeals and affirm the trial court in dismissing this case.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, and GUY, JJ., concur.

DORE and DURHAM, JJ., concur in the result.

---

[19]See State v. Murray, 110 Wn.2d 706, 757 P.2d 487 (1988); State v. Huft, 106 Wn.2d 206, 720 P.2d 838 (1986); In re Rosier, 105 Wn.2d 606, 717 P.2d 1353 (1986).

[20]State v. Ng, 110 Wn.2d 32, 36–37, 750 P.2d 632 (1988).